IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CUBA SOIL AND WATER CONSERVATION
DISTRICT and LEA SOIL AND WATER
CONSERVATION DISTRICT,

         **Plaintiffs,**

vs.                                                              Civ. No. 06-1251 JH/RHS

JAMES LEWIS, NEW MEXICO STATE
TREASURER, and the STATE OF
NEW MEXICO,

         **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on Defendants' *Motion to Dismiss* [Doc. No. 5], in which they argue, *inter alia*, that Plaintiffs' Amended Complaint fails to set forth a justiciable "case or controversy" for adjudication, that Plaintiffs have no private cause of action for their claims, that Plaintiffs' claims present a political question upon which the Court may not encroach, and that Defendants have immunity under the Eleventh Amendment. For the reasons set forth below, the Court finds that Plaintiffs have no private cause of action against the Defendants, and therefore will grant the motion to dismiss.[1]

## BACKGROUND

Plaintiffs, two soil and water conservation districts, are subdivisions of the State of New Mexico ("the State"). Plaintiffs claim that both the State and its Treasurer, Defendant James Lewis,

---

[1] In reaching this decision, the Court has considered not only all the briefs on the motion to dismiss itself, but also the related arguments in Plaintiffs' reply brief in support of their motion for preliminary injunction [Doc. No. 18] and Plaintiffs' two surreplies [see Doc. Nos. 28 and 29].

have failed to properly distribute federal mineral royalties that the State received under the Federal Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. §191(a), which provides in pertinent part:

> All money received from sales, bonuses, royalties including interest charges collected under the Federal Oil and Gas Royalty Management Act of 1982 [30 U.S.C.A. § 1701 et seq.], and rentals of the public lands under the provisions of this chapter and the Geothermal Steam Act of 1970 [30 U.S.C.A. § 1001 et seq.], shall be paid into the Treasury of the United States; and, subject to the provisions of subsection (b) of this section, 50 per centum thereof shall be paid by the Secretary of the Treasury to the State other than Alaska within the boundaries of which the leased lands or deposits are or were located; said moneys paid to any of such States on or after January 1, 1976, *to be used by such State and its subdivisions, as the legislature of the State may direct giving priority to those subdivisions of the State socially or economically impacted by development of minerals leased under this chapter*, for (i) planning, (ii) construction and maintenance of public facilities, and (iii) provision of public service . . .

(emphasis added). Thus, fifty percent of all mineral royalties paid to the United States must be remitted to the State whose lands generated those royalties, with the directive that the State give priority to those subdivisions adversely affected by the mining activities for the purposes of planning, constructing, and providing public services.

In their Amended Complaint, Plaintiffs allege that the State of New Mexico does not distribute its share of federal mineral royalties in accordance with 30 U.S.C. § 191, but rather deposits the money in a general statewide education fund, without any requirement that priority be given to subdivisions most impacted by federal mineral development. Amended Complaint at ¶ 9. Plaintiffs allege that the communities and residents within the two districts are among the poorest in New Mexico, and that the past and present mineral development within their borders have caused adverse environmental, social and economic impacts. *Id*. at ¶¶ 6, 10-11. Plaintiffs seek monetary compensation—specifically, a portion of the past eight years of federal mineral royalty proceeds,

as well as a portion from the date of filing of their complaint forward, that is proportionate to the amount of such royalties generated from lands within their boundaries. Amended Complaint at ¶ 16.[2] Plaintiffs also seek an injunction against Lewis ordering him to deposit all federal mineral royalty funds into the Court registry until the New Mexico State Legislature enacts legislation regarding the distribution of such funds that the Court determines to be consistent with Section 191(a) of the MLA. *See id.* at ¶¶ 2, 16, 19 and "Prayer for Relief."

## LEGAL STANDARDS

Defendants move to dismiss this case on grounds of lack of subject matter jurisdiction, Rule 12(b)(1), and for failure to state a claim, Rule 12(b)(6). In ruling on the motion, "all well-pleaded factual allegations in the ... complaint are accepted as true and viewed in the light most favorable to the non-moving party." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (internal quotation marks omitted).

## DISCUSSION

The Court turns first to the State's argument that the MLA does not provide the Plaintiffs with a private right of action under which to pursue their claims. While acknowledging that the MLA does not explicitly create a cause of action on their behalf, Plaintiffs argue that the statute creates an implied cause of action. To establish a private right of action, Plaintiffs must show that the MLA manifests Congressional intent to create a private right and also a private remedy. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Congressional intent is the only basis upon which a private right of action may be inferred. *See Chaffin v. Kansas State Fair Board*, 348 F.3d. 850,

---

[2] However, it appears that Plaintiffs now concede that their claim for eight years of past relief is barred by the Eleventh Amendment. *See* Doc. No. 8 at p. 21, n.16 (citing *Edelman v. Jordan*, 415 U.S. 651, 668 (1973)).

857 (10th Cir. 2003) (citing *Alexander v. Sandoval*, 532 U.S. at 286 (2001)); *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1267 (10th Cir. 2004). "Without it, a cause of action does not exist and courts may not create one no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. at 286-87 (2001).

To determine Congressional intent, the Court the must first examine the statute for "rights-creating language." *Id*. at 288 (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690, n.13 (1979)). Such language "explicitly confers a right directly on a class of persons that includes the plaintiff" and identifies "the class for whose especial benefit the statute was enacted." *Boswell*, 361 F.3d 1263, 1267 (10th Cir. 2004) (quoting *Cannon*, 441 U.S. at 690 n.13, 688 n.9 (1979) (internal quotation marks omitted)). As was the case in *Alexander v. Sandoval*, the statute at issue here is devoid of such "rights-creating language." Neither 30 U.S.C. § 191 specifically, nor the MLA generally, appears to create particular rights in the subdivisions of a State or their residents. Instead, Section 191 says that the monies paid to the State is to be used "as the legislature of the State may direct" with Congress directing those States to give priority to those subdivisions socially or economically impacted by mineral development. The statute is silent as to how a State should evaluate the relative social and economic impact on its subdivisions. The Supreme Court has found that statutes that merely regulate the distribution of public funds by a federal agency do not create private rights of action for the benefit of the recipients of such funds. *See, e.g., Cannon v. University of Chicago*, 441 U.S. at 690-693 (expressing reluctance to infer a private remedy in favor of individual persons if Congress, instead of drafting a statute with an unmistakable focus on the benefitted class, had written it simply as a prohibition against the disbursement of public funds to institutions engaged in discriminatory conduct); *Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 772-73 (1981) (declining to find a private remedy in Section 1 of the Davis-Bacon Act, because

4

while it requires that certain stipulations be placed in federal construction contracts for the benefit of mechanics and laborers, it does not confer rights directly on those individuals since it is "phrased as a directive to federal agencies engaged in the disbursement of public funds"). Plaintiffs emphasize the fact that Congress amended the MLA in 1976 such that the distribution of funds no longer focused upon statewide schools and roads, but rather upon giving priority to geographic subdivisions of a state most affected by mineral development. They also cite to legislative history in which members of Congress embraced that approach. However, that same legislative history cited by Plaintiffs does not demonstrate that Congress intended to also endow State subdivisions with a private right of action. The revisions to the statutory language do not remove the discretion afforded to State legislatures in implementing Congress' directive. Thus, the amendments to the statute regarding the purposes of the funds to be distributed simply do not create a private right of action in any person or entity who disagrees with the State's approach in spending the money. In short, there is nothing in the text or structure of the MLA in general, or in Section 191 specifically, that indicates that Plaintiffs are members of the class for whose special benefit the statute was enacted. *See Cort v. Ash*, 422 U.S. 66,78 (1975). The statute does not define such a class of state subdivisions with any precision, instead leaving that decision to the legislatures of the states receiving funds under Section 191.

The Court also must consider "the relation between the specific provision at issue and the related statutory scheme." *Boswell*, 61 F.3d at 1267 (citing *Love v. Delta Airlines*, 310 F.3d 1347,1353 (11th Cir. 2002)). In other words, the Court must examine the text and structure of the statute. *Northwest Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77, 91 (1981)). In this way, the Court may determine whether there is any indication of Congressional intent to create or deny a private legal remedy. Again, the Court concludes that Congress did not intend to create

a private right of action against the states. Section 195 of the MLA, 30 U.S.C. § 195, discusses enforcement of the statute. It provides that it is unlawful to organize or participate in a scheme to defeat the purposes of the statute or to obtain money under the Act through false statements. *Id*. at § 195(a). The MLA provides for the imposition of a fine or term of imprisonment, *id*. at § 195(b) and (e), and specifically states that the United States Attorney General and the States themselves may institute civil actions to enforce the statute. *Id*. at § 195(c) and (f). Conspicuously absent is any mention of a civil action by a state subdivision or any other citizen against a State in order to enforce the "priority" distribution of mineral royalties under Section 191.

Next, the Plaintiffs must show that implying a private remedy is consistent with the underlying purposes of the MLA. *Coutu*, 450 U.S. at 771 (observing that the fact that an enactment is designed to benefit a particular class does not end the inquiry; instead, it must also be asked whether the language of the statute indicates that Congress intended that it be enforced through private litigation). Courts have observed that the statute's purpose is to promote the orderly development of oil and gas deposits in publicly owned lands through private enterprise, and by doing so obtain reasonable returns on assets belonging to the public. *See Harvey v. Udall*, 384 F.2d 883, 885 (10th Cir. 1967); *Mountain States Legal Foundation v. Andrus*, 499 F.Supp. 383, 392 (D. Wy. 1983). A private right of action in favor of the Plaintiffs would not assist these purposes, but rather would encourage an increase in litigation by individuals and state subdivisions against States over their prioritization of the relative impacts upon and needs of state subdivisions. Nothing in the text of the statute supports such an outcome.

Plaintiffs rely upon the district court's decision in *Arkla Exploration Co. v. Watt*, 548 F. Supp. 466 (D. Ar. 1982) in support of his contention that the MLA creates a private cause of action in their favor. However, *Arkla* is distinguishable. In that case, a natural resources exploration

company sued the United States Department of the Interior, challenging its decision to grant oil and gas leases to a competitor. The court found that it had jurisdiction to review a final action by that federal agency under the Administrative Procedures Act or 28 U.S.C. § 1331. *Id.* at 472. The court also concluded that under the criteria set forth in *Cort v. Ash*, 422 U.S. 66 (1975), Section 191 of the MLA creates a right of action in favor of a State to enforce its right to fifty percent of the mineral royalties, including the right to attack allegedly capricious determinations by a federal agency which affect those payments. However, this case involves an action against a State, not review of an administrative decision by a federal agency. The court in *Arkla* neither considered nor held that the MLA creates a private right of action for individuals or state subdivisions to sue a State to enforce any portion of the Act. Therefore, *Arkla* is not helpful to Plaintiffs' argument.

In light of all the foregoing, the Court concludes that the MLA does not create an implied private cause of action in favor of the Plaintiffs. Therefore, the Court need not reach the Defendants' remaining arguments, which are now moot. *See, e.g., National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 456, 465 n. 13 (1974) (observing that if a private cause of action does not exist in favor of a particular plaintiff, the issues of standing and jurisdiction need not even be addressed).

**IT IS THEREFORE ORDERED** that Defendants' *Motion to Dismiss* [Doc. No. 5] is **GRANTED**, and *Plaintiffs' Motion for a Preliminary Injunction* [Doc. No. 12] is **DENIED AS MOOT**.

_____
**UNITED STATES DISTRICT JUDGE**